# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPER F. WILSON, | Case No. 1:15-cv-01424-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| BEARD, et al., | FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | |
| | (ECF Nos. 9, 10) |
| | **FOURTEEN (14) DAY DEADLINE** |

### Findings and Recommendations Following Screening

**I.  Background**

Plaintiff Jasper F. Wilson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on September 21, 2015.  (ECF No. 1.)

On November 30, 2017, the Court screened Plaintiff's complaint under 28 U.S.C. § 1915A, and found that it stated a cognizable claim against Defendants Holland, Recio, Medina, Cuaron, Coria, Negrete, Beard, Stainer, and Walsh for violation of the Eighth Amendment based on unsafe and unhealthy conditions of confinement, but failed to state any other cognizable claims against any other defendants.  The Court provided Plaintiff with an opportunity to file an

amended complaint or notify the Court of his willingness to proceed only on his cognizable claims. (ECF No. 9.)

On December 11, 2017, Plaintiff notified the Court of his willingness to proceed only on his cognizable claims. (ECF No. 10.) Accordingly, the Court issues the following Findings and Recommendations.

**II.     Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

### III. Plaintiff's Allegations

Plaintiff is housed at Calipatria State Prison in Calipatria, California. The events giving rise to this action allegedly occurred while Plaintiff was housed at the California Correctional Institution ("CCI") in Tehachapi, California. Plaintiff names the following defendants in their individual and official capacities: (1) Jeffrey A. Beard, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) M.D. Stainer, CDCR Director of Adult Institutions; (3) Kim Holland, CCI Warden; (4) M. Dailo, CC-II, CCI Appeals Coordinator; (5) K. Westergren, Correctional Lieutenant; (6) M. Recio, Correctional Officer; (7) J. Medina, Correctional Officer; (8) D. Cuaron, Correctional Officer; (9) A. Coria, Correctional Officer; (10) M. Negrete, Correctional Officer; (11) W. Walsh, Ph.D., CCI Chief of Mental Health; and (12) E. Nagandi, Registered Nurse.

Plaintiff alleges as follows: On June 16, 2014, Defendants Beard, Stainer, and Holland implemented a suicide prevention policy. Pursuant to this policy, a Guard One metal tracking button is secured to each hollow metal cell door within the building and the guards record their safety checks of all occupied cells by touching the recording pipe (a six-inch thick metal pipe) to the metal tracking button. The pipe emits a very loud beeping noise. These Guard One security checks were implemented by CDCR, based on an agreement in a class action lawsuit, Coleman v. Brown, 2:90-cv-0520-LKK-DAD, as a measure to enhance inmate safety and prevent inmate suicides.

On July 10, 2015, the federal receiver heightened the Guard One rounds by ordering mental health psych-techs to conduct wellness checks in the housing units once a day. Plaintiff alleges that this resulted in his cell door being hammered with the pipe 49 times in one day, 337 times a week and 1,345 times a month, causing him mental, emotional, psychological and physical harm. Plaintiff further alleges that he suffered sleep/sensory deprivation caused by loud hammering of the pipe on the cell door, loud beeping from the pipe, and the section doors slamming open and shut every 30 minutes during wellness checks.

On June 16, 2014, Plaintiff submitted a request for interview to Correctional Officer B. Koonce, complaining about the adverse housing conditions that were beginning to have an effect

3

on his sleep. Plaintiff requested that the cell-door checks with the pipe be discontinued. Officer Koonce responded by explaining that it was the new suicide prevention policy at CCI. Plaintiff asserts that his appeal was partially granted on August 6, 2014, but his primary concern was ignored. On August 21, 2014, Plaintiff reiterated his dissatisfaction with the second level appeal response, noting that he was not a member of the Coleman class action, he was consolidated with the class without his consent or knowledge and he had not entered into any agreements with class counsel. Plaintiff asserts that this appeal was fully exhausted.

On July 15, 2014, Plaintiff submitted an inmate health care appeal, CDCR 602, which challenged the newly implemented suicide prevention policy implemented by Defendants Holland, Walsh and Beard. In the appeal, Plaintiff asserted that all non-mental health prisoners, including Plaintiff, that are housed within the segregation units were being identified as suicide risks. Plaintiff protested his involuntary inclusion in the Mental Health Services Delivery System and reportedly refused the suicide prevention policy that was implemented pursuant to an agreement with the Coleman class plaintiffs, which has consolidated and identified Plaintiff with those prisoners having serious mental illness. Plaintiff alleges that this is in violation of his constitutional rights.

On August 17, 2014, Plaintiff objected to the first level response, which was treated as a suicide risk and sent to P. Shakir to prepare a mental health assessment of Plaintiff for pointing out that the pipe causes suicidal ideations and thoughts of suicide. Plaintiff requested that the Guard One/pipe be affixed only to the Coleman class members' cell doors.

Plaintiff alleges that the Coleman court lacked jurisdiction and that action must be dismissed. Plaintiff also alleges that he has standing to contest any court rulings in the Coleman class action regarding the staggered welfare check of prisoners in segregation units not associated with the class. Plaintiff believes that the security check should be applied only to Coleman class members with serious mental illness and discontinued for all non-mental health prisoners in segregation units.

On September 15, 2014, during first watch, Correctional Officer M. Recio was picking up mail and performing his assigned security/suicide prevention welfare check utilizing the second

and third watch pipe that beeps very loudly during the day. Plaintiff presented three pieces of mail to Officer Recio, one of which was a CDCR 602 appeal against L. Nguyen. Officer Recio began reading the confidential legal mail, became angry and destroyed all three pieces of mail by ripping them in half. Plaintiff contends that Officer Recio appeared to be under the influence of narcotics while on duty. Although Plaintiff requested that Officer Recio contact his superior, Officer Recio refused. Plaintiff boarded up his cell window in an effort to force Officer Recio to contact the first watch sergeant or watch commander, which is mandated by policy. The policy was quoted loudly to Officer Recio, and Officer Recio also was asked to utilize the first watch pipe and to stop his aggressive hammering of the cell doors. Plaintiff alleges that Officer Recio then terrorized and stalked Plaintiff for 7½ hours by hammering the pipe approximately 105 times until his shift ended.

On September 16, 2014, Plaintiff submitted a CDCR 602 staff misconduct complaint against Officer Recio. The appeal was denied and it was determined that Officer Recio did not violate the policy. Plaintiff alleges that the policy played a role in Officer Recio's actions, which violated Plaintiff's rights.

On October 3, 2014, Plaintiff asked Correctional Officer J. Medina to refrain from forcefully hammering the cell door with the pipe device and stated that hammering the cell door was an abuse, constituting harassment, terrorism and torture. Plaintiff also notified Officer Medina that he was being medically treated and had to consume acetaminophen three times a day for migraine headache pain due to the hammering of the cell door. Plaintiff explained to Officer Medina that he was causing Plaintiff deep throbbing migraines and asked him to stop hammering the cell door. Officer Medina stated, "602 me." Plaintiff and Officer Medina engaged in a heated argument. Plaintiff asserts that Officer Medina tortured him for 7 ½ hours as he hammered Plaintiff's cell door until his shift ended. Plaintiff contends that the suicide prevention policy is the moving force behind Officer Medina's actions and there is no training on how to utilize the pipe.

On October 5, 2014, Plaintiff submitted a CDCR 602 staff misconduct complaint against Officer Medina. The appeal was denied and it was determined that Officer Medina did not

violate policy. Plaintiff alleges that the policy played a role in Officer Medina's actions, which violated Plaintiff's rights.

On October 7, 2014, Plaintiff asked Correctional Officer D. Cuaron to refrain from forcefully hammering the cell door to Plaintiff's assigned housing. Plaintiff alleges that Officer Cuaron was abusing the guard one/pipe device during his wellness rounds. Plaintiff informed Officer Cuaron that his actions were causing Plaintiff severe migraine headaches, stress and the inability to rest, think clearly, or sleep. Plaintiff showed Officer Cuaron the doctor's orders and his prescription medication. Officer Cuaron stated, "That's how I do it. There's no cushion, it's metal on metal." Plaintiff alleges that Officer Cuaron continued hammering the device on Plaintiff's cell door and yelled for everyone to get used to it because it was policy.

On October 7, 2014, Plaintiff submitted an inmate request for interview regarding Officer Cuaron's use of the guard one/pipe. Plaintiff asserts that Officer Cuaron signed and dated the request on a day that he called in and took off. Plaintiff also asserts that Officer Cuaron refused to respond to the request, destroyed some copies and proceeded to hammer Plaintiff's cell door with heightened aggression.

On October 16, 2014, Officer Cuaron allegedly retaliated against Plaintiff by fabricating a mental health referral falsely alleging that Plaintiff was hostile, assaultive, with poor self-control and exhibiting bizarre behavior. Officer Cuaron submitted the referral in an attempt to remove Plaintiff from the housing unit and confine him to an observation housing unit for suicidal/mental health evaluations. Plaintiff contends that Officer Cuaron made certain that his friend, E. Nagandi, R.N., received the mental health referral. Plaintiff alleges that Nurse Nagandi, at Officer Cuaron's behest, executed a suicide risk evaluation requesting that Plaintiff be admitted to the observation housing unit even though she did not recognize any signs or symptoms associated with a suicide risk. Plaintiff alleges that Correctional Sergeant R. Abernathy quashed the move because she recognized what Officer Cuaron and Nurse Nagandi were up to with reprisals.

On October 16, 2014, Nurse Nagandi responded to the mental health referral authored by Officer Cuaron. Nurse Nagandi approached Plaintiff's cell and asked questions that were never answered by Plaintiff. When Nurse Nagandi could not get Plaintiff to answer her questions,

Officer Cuaron pulled her into the rotunda.

Later, Correctional Sergeant R. Abernathy, Correctional Sergeant Witson and an unidentified Correctional Sergeant approached Plaintiff's cell and ordered him to cuff up. Plaintiff was informed that he was wanted at B-medical and he was being admitted to the observation housing unit for acting up. Plaintiff refused, stating that the only way he was leaving the cell was by force. Plaintiff explained to Sergeant Abernathy what Officer Cuaron was attempting to do to Plaintiff for threatening to file a staff complaint. Plaintiff presented the signed CDCR 22 backdated by Officer Cuaron. After reviewing the CDCR 22, Sergeant Abernathy left the building and returned 15 to 20 minutes later. Sergeant Abernathy indicated that Plaintiff's move had been squashed, he was staying in his assigned housing and the psych would see him in the morning. Sergeant Abernathy left after ordering Officer Cuaron to stay away from Plaintiff's cell for the rest of the night.

On October 17, 2014, Sally Dhahbi, PhD, cleared Plaintiff of any mental health issues. Plaintiff submitted a handwritten letter to Dr. Dhahbi invoking his right to refuse treatment or diagnoses.

On October 20, 2014, Plaintiff submitted a CDCR 602 against Officer Cuaron. The appeal was denied and it was determined that Officer Cuaron did not violate policy. Plaintiff alleges that the policy played a role in Officer Cuaron's actions, which violated Plaintiff's rights.

On November 5, 2014, Plaintiff submitted a CDCR 602 against Nurse Nagandi, but did not receive a response. Plaintiff submitted a CDCR 22 to L. Ledford on December 8, 2014 to inquire into the status of the appeal.

On December 7, 2014, Plaintiff submitted a CDCR 602 staff misconduct complaint against Officer A. Coria and M. Negrete for acting in concert on November 21, 2014 to harass and attack his cell door and his sanity with the Guard One/pipe.

On December 15, 2014, Plaintiff submitted a second CDCR 22 explaining that Ledford refused to respond to his written request or expound as to the status of Plaintiff's appeal against Nurse Nagandi. Plaintiff believes that the Health Care Appeals Office destroyed his appeal.

///

On December 22, 2014, Plaintiff submitted a CDCR 602 staff misconduct complaint against Officer Cuaron and Officer A. Coria for acting in concert on December 12, 2014 to harass and attack Plaintiff's cell door and his sanity with the Guard One/pipe.

On December 24, 2014, Plaintiff alleges that he was retaliated against by Appeals Coordinator M. Dailo by cancelling Plaintiff's appeal in an effort to silence the complaint. Plaintiff alleges that the appeal was cancelled because Correctional Sergeant Spears was documented as a witness to Officer Cuaron's actions and directed Plaintiff to write Officer Cuaron up and call her as a witness.

On December 29, 2014, Plaintiff challenged the appeal cancellation.

On January 8, 2015, Plaintiff was being interviewed by Correctional Lieutenant K. Westergren regarding his staff complaints against Officer Coria and Negrete for their hammering of his cell door. During the interview, Plaintiff indicated that he had nothing to add to the appeal, but insisted that Sergeant Spears be interviewed regarding the subject matter under appeal. Lieutenant Westergren stated his belief that the complaint was "bullshit," and the officers in question were good friends of his and threatened to make the complaint go away by any means necessary.

On January 19, 2015, Plaintiff filed CDCR 602 staff misconduct complaint against Lieutenant Westergren for retaliating against Plaintiff's First Amendment rights.

On January 21, 2015, Plaintiff received a CDC Form alleging that Plaintiff refused to be interviewed or cooperate with the interviewer on January 8, 2015. Plaintiff alleges that the chrono was not provided to Plaintiff and was fabricated by Officer Westergren. Plaintiff also alleges that the appeal was cancelled to protect Officer Westergren's friends, Officers Coria and Negrete. On February 3, 2015, Plaintiff was forced to challenge the cancellation of his appeal.

**IV. Discussion**

**A. Official Capacity**

Plaintiff is advised that "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dep't. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, "[a] state

official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State.' " Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989). Also, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003). Accordingly, Plaintiff may not bring suit against defendants in their official capacities for monetary damages. However, Plaintiff is not precluded from pursuing his claims for injunctive relief against state officials in their official capacities.

### B. Conditions of Confinement

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

Conditions which result in chronic, long-term sleep deprivation may support a claim under the Eighth Amendment. See Chappell v. Mandeville, 706 F.3d 1052, 1057–61 (9th Cir. 2013); Keenan v. Hall, 83 F.3d 1083, 1090–91 (9th Cir. 1996); LeMaire v. Maass, 12 F.3d 1444, 1460 (9th Cir. 1993). At the pleading stage, Plaintiff's allegations and exhibits are sufficient to state a cognizable Eighth Amendment claim based on unsafe and unhealthy conditions of confinement caused by the Guard One security checks against Defendants Holland, Recio, Medina, Cuaron, Coria and Negrete. See, e.g., Matthews v. Holland, Case No. 1:14-cv-01959-SKO (PC), 2017 WL 1093847, at *5, 8 (E.D. Cal. Mar. 23, 2017) (prisoner stated claim against warden for violation of right under Eighth Amendment not be confined under circumstances resulting in chronic, long-term sleep deprivation resulting from implementation of Guard One policy); Rico v.

Beard, Case No. 16-cv-04348-KAW (PR), 2016 WL 5724997, at *2 (E.D. Cal. Sept. 30, 2016) (prisoner stated cognizable Eighth Amendment claim based on extreme sleep deprivation allegedly caused by Guard One safety checks).

Further, Plaintiff's allegations are sufficient to state a claim against supervisory Defendants Beard, Stainer and Walsh arising from the Guard One security checks and mental health wellness checks. Although liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676–77, supervisory liability may exist without any personal participation "if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### C. First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567−68 (9th Cir. 2005); accord Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267–68 (9th Cir. 1997). Mere speculation that defendants acted out of retaliation is not sufficient. Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior

lawsuit).

Plaintiff alleges that Officer Cuaron filed a false mental health chrono to have Plaintiff evaluated by mental health staff in retaliation for Plaintiff's staff complaint against him. This allegation is not sufficient to state a cognizable claim for relief. Plaintiff's own allegations suggest that Officer Cuaron's actions advanced a legitimate correctional goal in securing Plaintiff's safety. As Plaintiff admits, he allegedly was suffering from mental and emotional issues related to the Guard One security checks.

Plaintiff's related allegations that Nurse Nagandi retaliated against him by attempting to remove him from the housing unit also are not sufficient to state a claim. According to Plaintiff's complaint, he was not removed from the housing unit and there is no indication that Nurse Nagandi undertook any adverse action against Plaintiff *because of* any protected conduct.

Insofar as Plaintiff complains that Officer Cuaron, Nurse Nagandi and Lieutenant Westergren cancelled or interfered with Plaintiff's appeals, this also is insufficient to state a cognizable retaliation claim. There is no indication that Plaintiff suffered any adverse action by way of the appeals process.

### D. Appeal Due Process

Plaintiff also appears to raise issues regarding the processing and handling of his CDCR-602 inmate appeals, including the cancellation of those appeals, against Defendants Cuaron, Nagandi, Dailo and Westergren. However, the existence of an inmate appeals process does not create a protected liberty interest upon which Plaintiff may base a claim that he was denied a particular result or that the appeals process was deficient. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). To state a claim under section 1983, Plaintiff must demonstrate personal involvement in the underlying violation of his rights, Iqbal, 556 U.S. at 677; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002), and liability may not be based merely on Plaintiff's dissatisfaction with the administrative process or a decision on an appeal, Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

///

///

11

## V. Conclusion and Recommendation

Plaintiff has stated a cognizable claim against Defendants Holland, Recio, Medina, Cuaron, Coria, Negrete, Beard, Stainer, and Walsh for violation of the Eighth Amendment based on unsafe and unhealthy conditions of confinement. The Court therefore recommends that Plaintiff's remaining claims and Defendants Dailo, Westergren, and Nagandi be dismissed from this action. Plaintiff was provided with an opportunity to file an amended complaint, but opted to proceed on the cognizable claims. As such, the Court does not recommend granting further leave to amend.

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, it is HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's complaint, filed on September 21, 2015, against Defendants Holland, Recio, Medina, Cuaron, Coria, Negrete, Beard, Stainer, and Walsh for unsafe and unhealthy conditions of confinement in violation of the Eighth Amendment;
2. Plaintiff's remaining claims be dismissed from this action; and
3. Defendants Dailo, Westergren, and Nagandi be dismissed from this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the

///
///
///
///

magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **December 12, 2017**         /s/ *Barbara A. McAuliffe*
                                                               UNITED STATES MAGISTRATE JUDGE