UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPER F. WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, et al.,<br><br>    Defendants. | No. 1:15-cv-1424 KJM DB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges use of the Guard One security check system ("Guard One") in the Security Housing Unit ("SHU") at the California Correctional Institution ("CCI") violated his Eighth Amendment rights. Before the court is defendants' motion to dismiss. For the reasons set forth below, this court recommends defendants' motion be granted in part and denied in part.

## BACKGROUND

**I.    Allegations of the Complaint**

Plaintiff is currently an inmate at Calipatria State Prison. He complains of conduct that occurred when he was incarcerated in the CCI SHU in 2014 and 2015. Plaintiff identified numerous defendants. After screening, the following defendants remain in this case: (1) Jeffrey Beard, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) M.D. Stainer, Director of Adult Institutions for CDCR; (3) Kim Holland, Warden of CCI; (4)

Correctional Officer ("CO") M. Recio; (5) CO J. Medina; (6) CO D. Cuaron; (7) CO A. Coria; (8) CO M. Negrete; and (9) W. Walsh, Chief of Mental Health at CCI. (ECF No. 1 at 12-14; ECF No. 9.)

Plaintiff states that defendants Beard, Stainer, Holland, and Walsh instituted the Guard One security system in the CCI SHU in June 2014. (ECF No. 1 at 14, 28-29.) The Guard One system was designed to reduce inmate suicides by confirming that officers have checked on inmates. The system requires officers to touch a metal button on each cell door in the SHU with a metal pipe. Plaintiff further alleges that in July 2015, a policy instituted by the federal receiver required one additional check with the Guard One system per day so that plaintiff's cell door was being "hammered" with the pipe 49 times a day. (Id. at 14-15.)

Plaintiff alleges that the hammering and beeping noises created by the Guard One system, and the slamming open and shut of the section doors, caused him mental and emotional harm, loss of sleep, sensory deprivation, and migraine headaches. (ECF No. 1 at 15, 19.) Plaintiff also complains that he should not be subject to the Guard One system because it was instituted pursuant to court order in Coleman v. Brown, a class action involving the care of seriously mentally ill prisoners. Plaintiff is not a Coleman class member. (Id. at 29.)

Plaintiff states that on June 16, 2014, he submitted a CDCR 22 form (inmate request for interview, item, or service) in which he complained about the effect of Guard One on his sleep. While plaintiff states that his appeal was "partially granted," he contends that his "main concerns" were ignored. Plaintiff then submitted a CDCR 602-HC form (inmate health care appeal) on July 15, 2014.

Plaintiff alleges that at various times in 2014 he complained to defendants Recio, Medina, Cuaron, Coria, and Negrete about their "aggressive and abusive hammering of the cell doors." However, those defendants did not then attempt to strike the metal disks with less force and, in retaliation, they hammered plaintiff's door with extra frequency and force. Plaintiff filed 602 appeals about those defendants' actions, but each was denied. (ECF No. 1 at 18-24, 30-32.)

////
////

Plaintiff seeks declaratory relief; injunctions requiring, among other things, defendants to use the Guard One system only on the cells of Coleman class members; compensatory damages; punitive damages; and costs of this suit. (ECF No. 1 at 33-34.)

## II. Procedural History

Plaintiff initiated this action by filing a complaint in the Fresno Division of this court on September 21, 2015. (ECF No. 1.) On screening, the court found plaintiff stated cognizable claims against defendants Holland, Recio, Medina, Cuaron, Coria, Negrete, Beard, Stainer and Walsh for violation of the Eighth Amendment based on unsafe and unhealthy conditions of confinement. (ECF No. 9.)

On March 12, 2018, defendants filed the present motion to dismiss. (ECF No. 19.) Plaintiff filed an opposition (ECF No. 29) and defendants filed a reply (ECF No. 30).

In May 2018, counsel for Jorge Andrade Rico filed a notice of related cases. (ECF No. 28.) On October 24, 2018, Judge Mueller related this case to six other cases, including Mr. Rico's case. This case was reassigned to Judge Mueller and to the undersigned magistrate judge. (ECF No. 31.)

## MOTION TO DISMISS

Defendants argue that they are protected from plaintiff's claims for damages by the doctrine of qualified immunity and that plaintiff's claims for injunctive relief are barred both by the doctrine of judicial comity and because they are moot.

## I. Legal Standards

### A. Standard of Review on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint,

Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

**B. Eighth Amendment Deliberate Indifference**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014); see also Farmer v. Brennan, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). Deliberate indifference occurs when "[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two-part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844)

("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")

### C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis - whether the constitutional right was clearly established at the time of the conduct - the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir.

2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al-Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**D. Mootness**

The case or controversy requirement of Article III of the federal Constitution deprives the court of jurisdiction to hear moot cases. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); NAACP v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984). A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982) (citations omitted). The federal courts are "without power to decide questions that cannot affect the rights of the litigants before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) (citation omitted).

In the context of a prisoner's request for injunctive relief, a prisoner's transfer away from the institution at which the challenged conduct is occurring will generally moot any claims for injunctive relief relating to the prison's policies, unless the suit is certified as a class action. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (when an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claim for such relief becomes moot when he is no longer subjected to those conditions); see also Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Johnson Moore, 948 F.2d 517, 519 (9th Cir. 1991). The claim is not moot, however, if there is a likelihood of recurrence. Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir. 2004). The capable-of-repetition-yet-evading-review exception to the mootness doctrine applies when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a reasonable expectation that the same party will be subjected to the same offending conduct. Id. at 1026. Courts also recognize an exception to the mootness doctrine where a defendant voluntarily ceases the illegal conduct but could resume it again. See O'Connor v. Washburn Univ., 416 F.3d 1216, 1221-22 (10th Cir. 2005).

**II. Analysis**

Defendants argue: (1) they are protected from a suit for damages challenging the use of Guard One by the doctrine of qualified immunity; (2) injunctive relief is inappropriate because it would conflict with the directive in <u>Coleman</u> that the prisons implement Guard One; and (3) because plaintiff is no longer in the CCI SHU, his claims for injunctive relief are moot. Below, this court first addresses defendants' arguments regarding qualified immunity. This court then addresses the issue of mootness. Because this court finds plaintiff's claims for injunctive and declaratory relief moot, it does not address defendants' remaining ground for dismissing those claims.

**A. Are Defendants Protected by Qualified Immunity?**

Defendants argue they are protected from individual liability for damages in this suit by the doctrine of qualified immunity. Defendants point out that implementation of the Guard One system at the CCI SHU was done pursuant to a court order in the <u>Coleman</u> class action. Plaintiff does not dispute that the <u>Coleman</u> order requires use of the Guard One system. Plaintiff contends, however, that he should not be subject to an order issued in <u>Coleman</u> because he is not a member of the <u>Coleman</u> class. In addition, plaintiff contends that officers have conducted Guard One checks inappropriately, causing unnecessary noise.

When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." <u>Saucier</u>, 533 U.S. at 201. Defendants argue the second point by contending that no reasonable officer would believe that complying with the <u>Coleman</u> order and executing the Guard One welfare checks would violate plaintiff's constitutional rights.

Neither party distinguishes the defendants in this action. The court find a distinction important for considering the application of qualified immunity here. The court divides the defendants into two groups: (1) high-level supervisory defendants who were involved in the

////

7

initial implementation of Guard One; and (2) floor officer defendants who were involved in the day-to-day use of the Guard One system.

### 1. High Level Supervisory Defendants

The court finds four defendants fit into this category: Beard, Stainer, Holland, and Walsh. Plaintiff contends all four defendants are responsible for the implementation of the Guard One system at CCI. However, plaintiff makes no allegations that these high level supervisory defendants were aware of his complaints about the noise created by the Guard One system or that they had any knowledge about the way in which officers used the system on a day-to-day basis.

Recently, the district court in the related Rico case held that high level supervisory defendants, such as the four defendants here, are entitled to qualified immunity from plaintiff Rico's similar claims. The court held that those defendants were "entitled to qualified immunity because they were carrying out a facially valid court order in instituting the Guard One system." Rico v. Beard, No. 2:17-cv-1402 KJM DB P, 2019 WL 1036075, at *2 (E.D. Cal. Mar. 5, 2019). This court can find no basis to distinguish defendants Beard, Stainer, Holland, and Walsh from the high level supervisory defendants in Rico. Like plaintiff Rico's allegations, plaintiff here does not charge these high level supervisory defendants with participation in, or awareness of, officers' misuse of the Guard One system on a day-to-day basis. Accordingly, Beard, Stainer, Holland, and Walsh are entitled to qualified immunity.

This court is sympathetic to plaintiff's frustration that he has been subjected to the Guard One checks even though he is not a Coleman class member and, therefore, had no representation in that case. However, defendants had a right to rely on the facially valid court order issued in Coleman. If plaintiff contends that the Guard One checks violate his rights even when conducted appropriately, the proper course is to seek to intervene in the Coleman case.[1] See Fed. R. Civ. P. 24; Bergh v. Washington, 535 F.2d 505, 507 (9th Cir. 1976) (party may not seek an injunction that would affect the disposition of another action to which they are not a party; proper course is to seek intervention in that other action).

---

[1] By noting that plaintiff may seek intervention in Coleman, this court is not rendering any opinion about whether plaintiff would be successful in doing so.

8

### 2. Floor Officer Defendants

The floor officer defendants are correctional officers Recio, Medina, Cuaron, Coria, and Negrete. To the extent plaintiff's claims against these defendants arise out of the implementation of the Guard One system pursuant to the Coleman order, these defendants are protected by the doctrine of qualified immunity as well. However, plaintiff also alleges that these defendants improperly conducted the welfare checks using the Guard One system. He states that each was aware that their conduct was causing plaintiff emotional problems, headaches, and sleep deprivation. However, each defendant continued to strike the metal pipe on the metal disk on each door with more force than necessary, causing excessive noise.

In Rico, the district judge also considered whether correctional officers responsible for conducting the Guard One checks are entitled to qualified immunity. The judge found first that the constitutional rights to be free of excessive noise and excessive sleep deprivation were clearly established by 2016, the time the conduct occurred in that case. Rico, 2019 WL 1036075, at *4. While the time period here, 2014-2015, is earlier than that considered in Rico, the cases upon which the court relied in Rico demonstrate that these rights were also clearly established as of 2014. See Jones v. Neven, 399 F. App'x 203, 205 (9th Cir. 2010); Keenan v. Hall, 83 F.3d 1083,1090 (9th Cir. 1996); Touissant v. McCarthy, 597 F. Supp. 1388, 1396, 1410 (N.D. Cal. 1984), rev'd in part on other grounds, 801 F.2d 1080 (9th Cir. 1986); Harris v. Sexton, No. 1:18-cv-0080 DAD SAB, 2018 WL 6338730, at *1 (E.D. Cal. Dec. 5, 2018) (finding rule that "conditions of confinement involving excessive noise that result in sleep deprivation may violate the Eighth Amendment" was clearly established with respect to conduct occurring in 2015); Matthews v. Holland, No. 1:14-cv-01959 SKO PC, 2017 WL 1093847, at *8 (E.D. Cal. Mar. 23, 2017) ("It has been clearly established in the Ninth Circuit, since the 1990s, that inmates are entitled to conditions of confinement which do not result in chronic, long term sleep deprivation." (Citing Keenan, 83 F.3d at 1090-91.).) Therefore, "a reasonable officer would have known [in 2014] it was unlawful . . . to hit "the Guard One buttons with more force than necessary" making unnecessary noise and causing inmates "severe sleep deprivation." Rico, 2019 WL 1036075, at *5 (internal quotation marks omitted).

9

In their pending motion, defendants challenge only the second prong of the qualified immunity test – whether the right at issue was clearly established at the time of the floor officer defendants' alleged misconduct. Based on Rico, this court finds the law was clearly established.

With respect to the first prong of the qualified immunity test, this court must assume plaintiff's allegations in the complaint are true. As described in the court's screening order, plaintiff has stated cognizable Eighth Amendment claims against defendants Recio, Medina, Cuaron, Coria, and Negrete. Therefore, at this juncture, those defendants cannot show that their conduct did not violate plaintiff's constitutional rights. Defendants Recio, Medina, Cuaron, Coria, and Negrete are not entitled to qualified immunity.

**B. Are Plaintiff's Claims for Injunctive Relief Moot?**

Defendants argue that because plaintiff is no longer incarcerated in the SHU at CCI, his claims for injunctive relief are moot and plaintiff's claims against defendants in their official capacities should be dismissed. Plaintiff does not dispute that he is no longer subject to the Guard One checks at CCI. However, he states that he meets an exception to the mootness doctrine because his claims are capable of repetition yet evade review.

The court in Rico considered the same mootness argument and the same exception. In that case, plaintiff Rico was no longer incarcerated in the SHU, but he remained at PBSP. The court held that Rico's claims for injunctive and declaratory relief were moot and the capable of repetition exception did not apply. Rico, 2019 WL 1036075, at *5-6. In the present case, because plaintiff has been transferred from CCI, where the complained of conduct occurred, plaintiff is even less likely than Rico to be again subject to the same conduct.

Plaintiff here raises an additional issue not addressed in Rico. He argues that he may be, and, in fact, has been, subject to the same conditions in other prisons. The conditions of plaintiff's confinement at other prisons is not before the court in this case; nor could they be. For the reasons set forth above, prison officials are entitled to qualified immunity for claims regarding the implementation and proper use of the Guard One system. Therefore, plaintiff's only viable claims are those regarding the way in which Guard One was used inappropriately. Plaintiff will not be subject to identical conditions in other prisons because there will be different officers

10

conducting Guard One checks in different environments. See Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (transfer of inmate to another facility moots their claims for injunctive relief relating to conditions of confinement). Plaintiff fails to establish his claims are capable of repetition but evade review.

This court finds plaintiff's claims for injunctive relief are moot. Further, while the issue was not raised by defendants, the court notes that, for the same reasons, plaintiff's claims for declaratory relief are also moot. See Rico, 2019 WL 1036075, at *5-6. Plaintiff's claims for both injunctive and declaratory relief, and, thus, his claims against defendants in their official capacities, should be dismissed. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 237-38 (1985) (Eleventh Amendment bars suits for damages against a state); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (suit against a state official in his or her official capacity is no different from a suit against the state itself).

**C. Conclusion**

This court finds defendants Beard, Stainer, Holland, and Walsh are protected from plaintiff's claims for damages by the doctrine of qualified immunity. The court further finds plaintiff's claims for injunctive and declaratory relief are mooted by plaintiff's transfer from the CCI SHU to a different prison. Therefore, defendants Beard, Stainer, Holland, and Walsh should be dismissed from this action.

Mootness does not affect plaintiff's damages claims against defendants in their individual capacities. See Wilson v. Nevada, 666 F.2d 378, 380-81 (9th Cir. 1982). Because defendants Recio, Medina, Cuaron, Coria, and Negrete are not protected by qualified immunity for plaintiff's claims based on their day-to-day use of the Guard One system, this case should proceed on plaintiff's Eighth Amendment claims for damages against those five defendants.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 19) be granted in part and denied in part as follows:

1. Plaintiff's claims for damages against defendants Beard, Stainer, Holland, and Walsh be dismissed because those defendants are protected by qualified immunity;
2. Plaintiff's claims for injunctive and declaratory relief be dismissed as moot;

3. Plaintiff's claims against all defendants in their official capacities be dismissed; and
4. This case proceed on plaintiff's Eighth Amendment claims for damages against defendants Recio, Medina, Cuaron, Coria, and Negrete.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 11, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/wils1424.mtd